## O'BRIEN v. UNITED STATES.

EMBEZZLEMENT; INDICTMENT; DUPLICITY; FRAUDULENT INTENT; EVIDENCE; REFRESHING MEMORY.

1. Sec. 834, D. C. Code (31 Stat. at L. 1325, chap. 854), plainly describes two classes of acts, either one of which constitutes embezzlement; the first being the unlawful conversion to his own use, by the accused, of

the property which has come into his possession by virtue of his employment, and the second being the fraudulent taking, making away with, or secreting, with the intent to convert, such property to his own use. (Following *Gassenheimer* v. *United States*, 26 App. D. C. 432.)

2. Under D. C. Code, sec. 834, which describes two classes of acts, either one of which constitutes embezzlement, an indictment charging the commission of both of such acts is not bad for duplicity; and a conviction is warranted upon proof of the commission of either of the acts.

3. Under D. C. Code, sec. 834, declaring embezzlement to be the unlawful conversion to his own use, by the accused, of property which has come into his possession by virtue of his employment, an indictment is sufficient which alleges such wrongful conversion; and an allegation of an intent to defraud is not necessary.

4. Where, on an indictment for embezzlement, certain witnesses have testified that they paid to defendant, a collector, certain amounts due his employer, and the employer's bookkeeper has testified that the defendant has not entered such amounts in a "credit book," wherein it was his duty to enter moneys collected, and where the bookkeeper has produced a ledger, with the entries in his own handwriting, and has testified that he monthly drew off from the ledger a statement of each customer's account and gave it to defendant, at the same time entering in pencil in the ledger the amount of such statement, it is permissible to allow the bookkeeper to refresh his memory by reading such pencil entries, while endeavoring to inform the jury what were the amounts in the statements given by him to the defendant on a particular month.

5. *Semble,* that in criminal cases parol evidence of the contents of a written instrument in the possession of the accused is admissible without notice to the defendant to produce such instrument.

6. Where, on an indictment for embezzlement by a collector, from his employers, of money received in the course of his employment, it appears that it was the duty of the defendant to enter in a "credit book" the amount of collections made by him, that the employer's bookkeeper copied such entries into a cash book and thence into a ledger, and that the "credit book" showed no entries by the defendant of moneys due his employer and received by him, the use of the ledger to prove that the defendant had not charged himself with such moneys is not prejudicial to the defendant, even though it be conceded that such entries in the ledger are not original entries.

7. The inference that a person has embezzled property by unlawfully converting it to his own use may be drawn from the fact that he has not paid the money in due course to the owner, or from the fact that he has not accounted for money which he has received.

No. 1627. Submitted March 6, 1906. Decided April 3, 1906.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in a prosecution for embezzlement.                          *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. John M. Thurston* and *Mr. Wilton J. Lambert* for the appellant.

*Mr. James S. Easby-Smith,* Special Assistant United States Attorney for the District of Columbia, for the appellee, the United States.

Mr. Justice McComas delivered the opinion of the Court:

This is an appeal from a judgment of the supreme court of the District of Columbia holding a criminal court. The judgment was upon a verdict of guilty after trial upon the indictment herein considered.

John L. O'Brien, the appellant, was indicted for embezzlement under section 834 of the Code of the District of Columbia. (31 Stat. at L. 1325, chap. 854.) The indictment contained eight counts identical in form in every respect, except that each count charged the embezzlement of a different sum of money. The first count charged that on a certain day John L. O'Brien was a salesman and collector in the employment of a certain Frank Hume, and that on the day named he had in his possession a sum of money stated, belonging to said Hume, which money, being of the value stated, had come into the possession of O'Brien by virtue of such employment, and he, having it in his possession and under his care, "did then and there, and while he was such clerk as aforesaid, wrongfully convert the same to his own use, and fraudulently take, make away with, and secrete the same with intent to convert the same to his own use, and did thereby then and there embezzle the same," against the form of the statute, etc. This statute, section 834 of the Code, is: "Embezzlement by agent, attorney, clerk, or servant. If

any agent, attorney, clerk, or servant of a private person or co-partnership, or any officer, attorney, agent, clerk, or servant of any association or incorporated company, shall wrongfully convert to his own use, or fraudulently take, make way with, or secrete with intent to convert to his own use, anything of value which shall come into his possession or under his care by virtue of his employment or office, whether the thing so converted be the property of his master or employer, or that of any other person, copartnership, association, or corporation, he shall be deemed guilty of embezzlement, and shall be punished by a fine not exceeding $1,000, or by imprisonment for not more than ten years, or both."

The appellant in the court below filed a motion to strike out the counts, and later a demurrer to the indictment. The motion and demurrer were overruled, as was also a motion to quash, later filed. Upon the trial, the defendant was tried and found guilty upon six counts of the indictment, and thereafter a motion in arrest of judgment was entered and overruled by the court.

Nine assignments of error are urged. All of them, except the 4th, 5th, and 6th, are considered together because they involve the construction of section 834, the indictment thereunder, and the instructions of the court based upon this statute and indictment.

1. Chief Justice Shepard, for the court, in *Gassenheimer* v. *United States,* 26 App. D. C. 432, has at this term said: "Section 834, as stated in appellant's brief, 'plainly describes two classes of acts, either one of which constitutes embezzlement; the first being the unlawful conversion to his own use, by the accused, of the property which has come into his possession by virtue of his employment, and the second being the fraudulently taking, making away with, or secreting with the intent to convert such property to his own use.' "

The offense is single, namely, embezzlement, which the statute says may be committed by either of two methods or ways. This count, which charges that the embezzlement was committed by means of both methods, is not bad for duplicity. A conviction under this count will be sustained by proof that the ac-

cused embezzled the money of his employer, Hume, either by wrongfully converting it to his own use, or by fraudulently taking, making away with, or secreting, the money with intent to convert it to his own use after it came into his possession by virtue of his employment.

Mr. Bishop says a statute often makes punishable doing one thing or another. A person who in one transaction does both violates the statute but once, and incurs its penalty. If he does but one thing he violates the statute equally. Therefore, the indictment on such a statute may allege, in a single count, that the defendant did both of the forbidden things, by "employing the conjunction 'and' where the statute has 'or,' and it will not be double, and it will be established at the trial by proof of any one of them." 1 Bishop, New Crim. Proc. § 436.

And again he says: "Some single offenses are of a nature to be committed by many means, or in one or another of several varying ways. Thereupon, a count is not double which charges as many means as the pleader chooses, if not repugnant; and, at the trial, it will be established by proof of its commission by any one of them." 1 Bishop, New Crim. Proc. § 434.

And again: "If a statute makes criminal the doing of this, or that, or that, mentioning several things disjunctively, there is but one offense, which may be committed in different ways; and in most instances all may be charged in a single count. But the conjunctive 'and' must ordinarily, in the indictment, take the place of 'or' in the statute, else it will be ill as being uncertain. A proof of the offense in any one of the ways will sustain the allegation." 1 Bishop, New Crim. Proc. § 586; *State* v. *Hodges,* 45 Kan. 393, 26 Pac. 676; *Tompkins* v. *State,* 4 Tex. App. 161; *State* v. *Smith,* 61 Me. 388.

In the indictment we are now considering, the offense charged is embezzlement. We repeat, it is single. Under the statute (Code, § 834), if the appellant should wrongfully convert to his own use, or fraudulently take and secrete, his employer's money with intent to convert the same to his own use, he would embezzle the same. Both methods of embezzling are alleged in the indictment with the conjunctive "and," whereupon, if one

method be proved, or if both methods be proved, the appellant is properly convicted under the count. The several modes mentioned in this statute and set out in the same terms in each count of this indictment are so many modes of describing one and the same offense, namely, embezzlement.

In *Crain* v. *United States,* 162 U. S. 625, 635, 40 L. ed.. 1097, 1099, 16 Sup. Ct. Rep. 952, the Supreme Court discusses several cases in which several offenses were charged in one count, and yet were not bad for duplicity; and the court proceeds: "We are of opinion that the objection to the second count upon the ground of duplicity was properly overruled. * * * The statute was directed against certain defined modes for accomplishing a general object, and declared that the doing of either one of several specified things, each having reference to that object, should be punished by imprisonment. * * * We perceive no sound reason why the doing of the prohibited thing, in each and all of the prohibited modes, may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute. And this is a view altogether favorable to an accused, who pleads not guilty to the charge contained in a single count; for a judgment on a general verdict of guilty upon that count will be a bar to any further prosecution in respect of any of the matters embraced by it."

We are of opinion, therefore, that the indictment in this case correctly charges embezzlement under section 834 of the Code, and the learned court below properly overruled the appellant's demurrer, and also his motion to quash the indictment.

The appellant insists that the court below erred in refusing to instruct the jury that to convict the appellant it must find that Hume's money was wrongfully converted by the defendant to his own use "with the intent to defraud Hume;" and that the court erred in instructing the jury that to convict the appellant it must believe, respecting Hume's money in his possession, "that he wrongfully converted that money to his own use." We agree that the evil intent is an element of every crime, which

must be in some way alleged and proved; but, as Mr. Bishop says, "where, in the nature of the individual case, it is a part of the act alleged, it need not be separately stated.   *   *   *   Hence to allege simply the act makes the required prima facie case." The rule is that, if a statute creating an offense is silent concerning the intent, nothing of the intent need appear in the averment.  1 Bishop, New Crim. Proc. §§ 521, 522.

Of course "the evil intent must be joined in averment to an act which, being in its nature innocent or indifferent, is by such intent made criminal. But an act in nature evil is prima facie evil also in intent; so that this intent need not be alleged, unless the law has made it affirmatively or descriptively an element in the offense."  1 Bishop, New Crim. Proc. § 524.

The section on which this indictment was based illustrates each of the three statements in Mr. Bishop's summary. The appellant could take, make away with, or secrete, his employer's money, and the nature of the act might be at least indifferent. Therefore, the statute says he must "fraudulently take, etc., with intent to convert to his own use." Such intent makes the act criminal. But, should the appellant wrongfully convert "to his own use" his employer's money, this act, in its nature, is evil, and prima facie the intent also is evil. If he wrongfully converted to his own use his employer's money the evil intent need not be further alleged. If the statute had added the superfluous intent, the statute would have made it an element of the offense; in which case the indictment must have alleged it, and the court below must have expressly charged it. In the case before us it was not necessary to specially charge an intent to defraud Hume, because the case of the government was pressed, not upon the second method, but upon the first method of embezzling, and conviction was asked because the appellant had wrongfully converted to his own use his employer's money. To wrongfully convert such money is an act in its nature evil, and the statement of the act itself imports the evil intent. The wrongful conversion constitutes the offense. Stephen's Digest Crim. Law, p. 254, note 4. Wrongful acts knowingly committed cannot be excused on the ground of innocent intent. The

color of the act determines the complexion of the intent. Therefore, in our opinion, the learned court below did not err as claimed in the appellant's 7th and 8th assignments of error.

The cases in New Jersey and Massachusetts, relied on by the appellant, are each cases in which the statute required the intent to defraud the employer, in the one case, and the intent to fraudulently convert to his own use, in the other, to be alleged. See *Com.* v. *Hays,* 14 Gray, 62, 74 Am. Dec. 662; *State* v. *Lyon,* 45 N. J. L. 274.

In *State* v. *Smith, supra,* wherein a number of independent substantive offenses were included in one count, and that count was rightly held bad, the court said that it is not so where the several acts mentioned in the statute are but so many modes of describing one and the same offense, that offense being established by proof of either of the modes.

In *State* v. *Butler,* 21 S. C. 353, the breach-of-trust act under which the defendant was indicted was held by the court to be "the same in all of its features as common-law larceny." Of course, in such a case the felonious intent must be alleged and proved. The other authorities cited by the appellant's counsel are not more persuasive than these.

2. The 4th, 5th, and 6th assignments of error relate to the admission of evidence to which the appellant excepted. The bill of exceptions is so defective that it is quite difficult to understand what occurred at the trial. Among the other witnesses the government produced Mary Horrigan and five others, who each testified that they knew the appellant, that he was a salesman and collector for Frank Hume, and that each of them had paid the defendant, for Hume, amounts named in the indictment, and each received from the defendant a receipted statement showing such payment, which statements were introduced in evidence, and identified as being in the handwriting of the appellant.

The government then produced Charles Schaaf, who testified that he is a bookkeeper in Hume's employment, and that for some years prior to October 28, 1902, when appellant was discharged, he was employed by Hume as salesman and collector.

Schaaf produced a "credit book" kept at Hume's store, and testifies that when collections were made it was the custom of business and the duty of the collectors, of whom appellant was one, to enter therein the moneys collected and the names of persons from whom collected; and it appeared that in the credit book there were no entries of collections corresponding with the several payments which Mary Horrigan and the five other witnesses testified they had made to appellant.

Schaaf further testified that each month he would make out and deliver to the defendant statements showing balances due Hume by each of these customers, and the witness produced a ledger kept by him as part of his duty as bookkeeper. The entries in the book were all in his own handwriting, and he monthly "drew off" from said ledger statements showing the state of the accounts of each of the customers of Hume from whom it was the defendant's duty to collect. When he completed a monthly statement he would add up the items of that statement, put the total at the bottom of the statement, and would give the statement to the appellant as collector, at the same time entering the total of the monthly statement thus given to the collector in lead pencil upon the ledger account of the particular customer. He always entered the pencil statement of the total when he delivered the statement with such total to the appellant for collection. He then read from the pages of the ledger which contained the accounts of Mary Horrigan and the five other witnesses the lead pencil totals of the monthly statements of amounts due by each of those witnesses, which were the same totals he had put upon the monthly statement he had at the same time delivered to the appellant as collector.

The appellant's counsel admitted that the written statements made by the witness and given to the defendant, to collect the amounts thereof from the customers, would be admissible, but objected that the pencil entries of the same amounts at the same time, made in the ledger by the witness, could not be admitted against the appellant. The court overruled the objection, and admitted such pencil entries of the totals. Now the lead-pencil entries were original entries made by the bookkeeper, Schaaf.

The appellant could not be required to produce the statements given him by the bookkeeper showing the amount due at the end of the month by the particular customer, even if he had them. It seems likely from the record that such statement was receipted by the appellant and given to the customer; but this is not clear and we may not assume it. It is plain that when Schaaf, the bookkeeper, "drew off" the items for the months due and the total thereof, payable by Mary Horrigan, for instance, and, at the very time he delivered such statement to the appellant as collector, entered in lead pencil the total that month due by Mary Horrigan, and then produced such entry, Schaaf used the entry to testify that, thus refreshed as to the transaction between the appellant and himself, he was able to say that the amount in lead pencil was the amount due that month by Mary Horrigan, and the total amount on the statement he gave to the collector, to demand from her. As Mr. Justice Strong [in *Insurance Cos.* v. *Weide* (*Republic F. Ins. Co.* v. *Weide*) 14 Wall. 380, 20 L. ed. 895] observes: "How far papers, not evidence *per se,* but proved to have been true statements of fact, at the time they were made, are admissible in connection with the testimony of a witness who made them, has been a frequent subject of inquiry; and it has been many times decided that they are to be received. And why should they not be? Quantities and values are retained in the memory with great difficulty. If, at the time when an entry of aggregate quantities or values was made, the witness knew it was correct, it is hard to see why it is not at least as reliable as the memory of the witness." *Bates* v. *Preble,* 151 U. S. 149, 155, 38 L. ed. 106, 109, 14 Sup. Ct. Rep. 277.

We take the meager bill of exceptions to mean that Schaaf, who stated that he had given to the appellant, as collector, Mary Horrigan's account with the total at the bottom thereof, and that at the same time he gave the statement to the appellant he put the total in pencil on the page in his ledger where appeared Mary Horrigan's account for that month, was enabled, when refreshed by this pencil entry produced, to testify, and that he did testify, that the statements he gave the collector for that

month authorized and enabled the collector to demand and receive that specific sum from Mary Horrigan; and it appears that Mary Horrigan testified that the collector gave her some such statement, that she paid him a sum of money thereon, and the same witness, Schaaf, produced the "credit book" whereon it was the duty of the appellant to enter the sum of money he at that time collected from Mary Horrigan, to let the jury see and know whether the collector had charged himself on the credit book with such sum. This testimony was properly admitted.

We fail to appreciate the objection made by the appellant's counsel to this evidence. It is admitted that the original statement delivered by Schaaf to the appellant would be admissible; it is denied that Schaaf's pencil entry of the total of each of said statements was admissible. Underhill, Crim. Ev. § 42, says that the rule requiring notice to produce a writing known to be in the possession of the opposite party before secondary evidence of its contents can be received is qualified in a criminal case.

"This rule is applicable to criminal prosecutions, with the qualification that, as the State has no power to compel the production of a writing in the rightful possession of the defendant, the notice to him is nugatory, and may perhaps, under some circumstances, be dispensed with."

In *McGinnis* v. *State,* 24 Ind. 506, the court says: "We are satisfied that in this country the current rule of decisions in prosecutions for larceny is in favor of admitting parol evidence of a written instrument which is the subject of the prosecution, and is in the possession of the prisoner, without first giving notice to produce it."

Apart from this view, the entries were contemporaneous writings made by the witness, and were competent to refresh his memory when endeavoring to inform the jury what amount for a particular month was the total of the statement given by Schaaf to the appellant to collect from each of the half dozen witnesses who testified, that for the particular month they had paid the appellant, as collector, specific amounts. We thus dispose of the fourth assignment of error.

The next objection to the testimony arose after Schaaf had testified that, when collections were made, it was the custom and duty of the collectors to make entries thereof in the "credit book" kept at the store for that purpose, and that the witness Schaaf constantly examined the "credit book" and transferred such entries, in the handwriting of the collectors, into the cash book kept by the witness Schaaf, which must mean the amount paid to appellant, for instance, by Mary Horrigan, the entry being signed, or by handwriting identified in the "credit book" as being a collection of money from Mary Horrigan by the appellant at a particular date, and Schaaf would transfer his entry to the cash book and thence to the ledger; and thereupon the appellant's counsel objected that the ledger was not an original book of entry, that the witness Schaaf should not be asked whether or not there appeared in his ledger on the page whereon was Mary Horrigan's account between June 27th and October 28th, 1902, a credit of $100 as paid by said Mary Horrigan, and which she had just testified she had paid the appellant for Frank Hume about June 27th, 1902. It appears that the court admitted the answer that no such entry appeared on the ledger. The government had offered the "credit book" in evidence, and Schaaf had testified that it was the custom and duty of the collector to enter thereon money paid by Mary Horrigan, and it appeared that the particular payment of $100 was not entered thereon. Schaaf had testified that he looked only to the "credit book" to find collections entered by the appellant, as paid by Mary Horrigan to him, and, when found such, had transferred it to the cash book and thence to his ledger. Thus his ledger on this subject only copied what payments of Mary Horrigan to appellant appeared on the "credit book." So far as we are able to understand the bill of exceptions, it must be taken to mean that when Schaaf offered Mary Horrigan's account in his ledger, showing no payment between June 27th, 1902, when she testified she paid appellant $100 for Hume, and the day appellant was discharged by Hume, Schaaf used his own entry in his own ledger to show what had already been shown by the "credit book" without objection, and the same proceeding was followed in re-

spect of the accounts of the five other witnesses who testified concerning payments made by them to the appellant from Hume. The "credit book" and the entries thereon were admitted without objection. We have already said the total of each account, the contemporaneous pencil entry of Schaaf, was admissible. The objection of appellant's counsel does not help us better to understand the meager statement in the record; but, because the absence of entries of payment in the ledger was a consequence of the absence of such entries in the "credit book," we are satisfied that no prejudice happened from the use of the ledger. It was a vain thing. At least there was no reversible error. The appellant's brief upon this point does not clarify the obscure statement in the record, but it does show that the entry in the ledger of credits upon Mary Horrigan's account, for instance, was in the handwriting of Schaaf, who had transferred it from the cash book, also kept by him; and that such entry was taken by him from the "credit book," wherein the appellant entered money paid by Mary Horrigan in his own handwriting; and that in this respect the ledger added nothing more than had already appeared in the "credit book" conceded to be admissible.

In our opinion, when each customer testified to payments made to the appellant as collector for Hume, and the appellant failed to charge himself with such payment on the "credit book," and, in respect numerous creditors during a long period of time, frequently omitted to charge himself on the "credit book," with like moneys; and the pencil entries proved what the appellant should have collected from each customer,—there was evidence that the appellant had wrongfully converted such moneys, or some of them, to his own use while in Hume's employment. As Mr. Stephens says, the inference that a prisoner has embezzled property by fraudulently converting it to his own use may be drawn from the fact that he has not paid the money in due course to the owner, or from the fact that he has not accounted for the money which he has received. Stephen's Digest Crim. Law, art. 312.

We are convinced, therefore, that the 5th and 6th assignments of error do not show reversible error. What we have said in

disposing of the assignments of error we have discussed also disposes of the assignments of error not discussed. This judgment upon the verdict in this case must be affirmed, and it is so ordered.                                                    *Affirmed.*