## PATTERSON *v.* UNITED STATES.*

CRIMINAL LAW; EMBEZZLEMENT; ATTORNEY AND CLIENT.

1. In a prosecution for embezzlement against one who wrongfully converted to his own use property coming into his possession by virtue of his employment, an intent to defraud need not be proved, but will be conclusively presumed.

2. An attorney who procured from his client an assignment of her claim against an insurance company, for the express purpose of embezzling the amount collected, cannot evade criminal liability, on the ground that the assignment changed the relation of the parties from attorney and client to that of debtor and creditor.

No. 2362. Submitted April 1, 1912. Decided May 30, 1912.

HEARING on an appeal from a judgment of conviction of the Supreme Court of the District of Columbia in a criminal prosecution for embezzlement. *Affirmed.*

The facts are stated in the opinion.

*Mr. J. E. Collins* and *Mr. Andrew A. Lipscomb,* for the appellant:

1. The question of intent to defraud was a material element.

*Embezzlement.*—For effect of fact that one is entitled to commissions out of fund embezzled, see note in 13 L.R.A.(N.S.) 511.

On failure to account for fund to one jointly interested therein as embezzlement, see note in 31 L.R.A.(N.S.) 822.

*State* v. *Lettschke,* 27 Or. 189, 40 Pac. 167; *Reg.* v. *Creed,* 1
Car. & K. 63; *Eilers* v. *State,* 34 Tex. Crim. Rep. 344; *Hamilton* v. *State,* 46 Neb. 284; *Reeves* v. *State,* 95 Ala. 31, 11 So.
158; *State* v. *Murphy,* 51 Cal. 376; *Snell* v. *State,* 59 Ga. 219;
*State* v. *Wallick,* 87 Iowa, 369; *State* v. *Eastman,* 60 Kan. 557;
*State* v. *Smith,* 47 La. Ann. 432; *People* v. *Galland,* 55 Mich.
628; *State* v. *Temple,* 63 N. J. L. 375; *Com.* v. *Rockfellow,*
163 Pa. 139; *State* v. *Hunt,* — R. I. —, 54 Atl. 937; *State* v.
*Blue,* 17 Utah, 175; *Batchelder* v. *Tenney,* 27 Vt. 578; *McCann*
v. *United States,* 2 Wyo. 275, Par. 4; *Reeves* v. *State,* 95 Ala.
31, 11 So. 58; *People* v. *Murphy,* 51 Cal. 379; *Beatty* v. *State,*
82 Ind. 228, 4 Met. (Ky.) 374; *People* v. *Lapique,* 12 Ill. 25;
*People* v. *Hurst,* 41 Mich. 328; *Ross* v. *Ennis,* 35 Ill. 488;
*Thomas* v. *State,* 33 Fla. 469; *State* v. *Davis,* 3 Penn. (Del.)
221; *Snell* v. *State,* 50 Ga. 219; *State* v. *Wallick,* 87 Iowa, 369,
374; *State* v. *Smith,* 47 La. Ann. 432.

2. One cannot commit embezzlement of money or other property lawfully his own, or in which he has a joint interest.
*St. Clair* v. *State,* 100 Ala. 61; *Parli* v. *Reed,* 30 Kan. 534;
*State* v. *Keith,* 126 N. C. 1114; *State* v. *Kent,* 22 Minn. 41;
*State* v. *William,* 118 Mo. 146; *Kerksey* v. *Fikes,* 29 Ala. 206;
*Reg.* v. *Barnes,* 8 Cox, C. C. 129; *People* v. *Burr,* 41 How.
Pr. 293; *State* v. *Foster,* 1 Penn. (Del.) 289; *Reg.* v. *Norman,*
Car. & M. 501; *Brady* v. *State,* 21 Tex. App. 659; *Fleener* v.
*State,* 58 Ark. 98; *Staples* v. *Johnson,* 25 App. D. C. 155;
*People* v. *Klee,* 69 Pac. 696; *Rose* v. *Innis,* 35 Ill. 487, 85 Am.
Dec. 373; *Bealy* v. *State,* 82 Ind. 228; *People* v. *Dorthy,* 20
App. Div. 308, 46 N. Y. Supp. 970.

*Mr. Clarence R. Wilson,* United States District Attorney, and
*Mr. James M. Proctor,* Assistant, for the appellee:

1. It is contended that the trial court erred in instructing
the jury that proof of a fraudulent intent at the time of a
wrongful conversion is unnecessary, if there was, in fact, such
wrongful conversion. The question is whether, if the jury
should actually find a wrongful conversion of the money, it is

necessary that they should find such conversion to have been with fraudulent intent. A complete answer is found in the case of *O'Brien* v. *United States,* 27 App. D. C. 263, where it is held that there may be a wrongful conversion of the property of another without any specific intent to defraud the owner thereof.

2. It is contended that the nature of the fund and of its possession by the defendant were such that he could not have been guilty of embezzling it.

These are mere abstract propositions, as no such contentions were advanced at the trial or arise in the record. *Rohde* v. *U. S.* 34 App. D. C. 249; *Brandestini* v. *Way,* 17 Wash. 293; *Territory* v. *Myer,* 24 Pac. 183; *Clark* v. *Com.* 97 Ky. 76; *People* v. *Civille,* 44 Hun, 497.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Appellant, defendant below, was found guilty of the crime of embezzlement under an indictment charging the wrongful conversion to his own use of the sum of $80.60, which had come into his possession as the attorney of one Cora Harris, and by virtue of his employment as an attorney by her.

Sec. 834 of the Code of the District of Columbia [31 Stat. at L. 1325, chap. 854] reads as follows: If any agent, attorney, clerk, or servant of a private person or copartnership, or any officer, attorney, agent, clerk, or servant of any association or incorporated company, shall wrongfully convert to his own use, or fraudulently take, make way with, or secrete with intent to convert to his own use, anything of value which shall come into his possession or under his care by virtue of his employment or office, whether the thing so converted be the property of his master or employer or that of any other person, copartnership, association, or corporation, he shall be deemed guilty of embezzlement."

The evidence shows that defendant was retained by Cora Harris as her attorney to collect a claim which she had against

an insurance company. It was agreed that for his services he should have one third of the amount that might be collected. Later, at the request of the defendant, Cora Harris and her husband, Burrell Harris, executed the following paper prepared by him:

Know all men by these presents, that we, Cora Harris and Burrell Harris, for value received, have hereby transferred and assigned and set over unto John W. Patterson, all and singular the amount due us or either of us as beneficiaries under the insurance policy issued by the Equitable Life Insurance Company of the District of Columbia, and numbered 407, 433.

And we do hereby authorize and empower the said John W. Patterson to bring suit for the recovery of said insurance and do all other things that he may deem necessary to these premises as fully and as effectually as we would do if personally present at the doing thereof, with the full power of substitution and revocation.

Done this the 23d day of October, A. D. 1909.

Cora Harris.<br>Burl Harris.

In pursuance of this authority, defendant entered suit against the insurance company, and recovered a judgment. After judgment, and before payment thereof, defendant obtained from Mrs. Harris a second assignment as follows:

Know all men by these presents, that I, Cora Harris, of the District of Columbia, and beneficiary under policy No. 407, 433, for value received, have transferred, set over, and assigned unto my attorney, Mr. John W. Patterson, all my right, title, and interest in and to the judgment rendered this 18th day of October, 1910, by reason of the said policy against the Equitable Industrial Life Insurance Company of the District

of Columbia, wherein Cora Harris is the complainant and the said company is the defendant.

                                                Cora Harris.

Witnesses:
        Burl Harris.
        Bessie Malvin.

Cora Harris and her husband both testified that both instruments were executed at the instance of defendant, to enable him, as he represented to them, to collect the claim against the insurance company, and to secure the payment of his fee. Nothing was paid to them for executing said papers. The judgment was obtained October 10th, 1910. The same was paid to defendant October 29th, 1910, in a check to him as "attorney for Cora Harris," on the Dime Savings Bank.

On the same day the check was cashed by the bank. Produced, it showed the indorsement,—"John W. Patterson, Attorney for Cora Harris." Defendant did not inform Cora Harris of the collection of the money until January, 1911. Repeated demands were made upon him for the money, and he made many promises to deliver the same, but failed to make the delivery. On February 10, 1911, he told Cora Harris that the case could not be settled then, but would have to stand for a while. She then caused his arrest. His reason for not settling was that the superintendent of the insurance company had notified him that the money had been procured by fraud, and steps would be taken to recover it. When arrested, February 10, 1911, he told the officer that he had come to see Cora Harris to make payment. Searched, $9 were found in his possession. He then said he expected to settle with a check. No check was found on his person.

On his own behalf defendant testified that the assignments were made to secure his fee of one third of the collection. "That he never considered that the aforesaid assignments vested in him any title to the sum collected, nor did he so claim, but their sole purpose was to secure the payment of his fee of one third of the proceeds collected." He further testified that

he did not use any of said money, but deposited the same in a box in the vault of the Lincoln National Bank. That he kept it because he felt sure from what Bennett, the insurance company's superintendent, said he would bring suit to set aside the judgment for fraud, or bring some criminal action. That he did not wish to use the money, but held it on account of Bennett's threats. He introduced evidence tending to show that the money had been so deposited, and the same was produced in the police court, and was again produced on this trial.

In rebuttal the government produced evidence tending to show that the insurance company had never contemplated an effort to recover the money, and that Bennett had not expressed his intention to defendant to institute either civil or criminal proceedings respecting the matter.

The only exception taken on the trial was to the following sentence in the charge: "The question of intent to defraud is not a material element, and the government is not required to prove an intent to defraud at the time of a wrongful conversion of the money, if such there was." The remainder of the charge is not contained in the record.

There was no error in this instruction. *O'Brien* v. *United States,* 27 App. D. C. 263–269. Sec. 834 of the Code has been held to describe "two classes of acts, either one of which constitutes embezzlement; the first being the wrongful conversion to his own use, by the accused, of property which has come into his possession by virtue of his employment, and the second being the fraudulent taking, making away with, or secreting with intent to convert such property to his own use." *Gassenheimer* v. *United States,* 26 App. D. C. 432. The offense of the defendant was that defined in the first clause of the section, namely, the wrongful conversion of the money to his own use.

As the word "fraudulently" is not made an element of this offense, it was held in *O'Brien's Case,* supra, that it was not necessary to allege in the indictment that the conversion was with intent to defraud. It was said by Mr. Justice McComas, who delivered the opinion of the court: "To wrongfully convert

such money is an act in its nature evil, and the statement of the act itself imports the evil intent.   \*   \*   \*   Stephen's Digest Crim. Law, p. 254, note 4. Wrongful acts knowingly committed cannot be excused on the ground of innocent intent." It not being necessary to allege the intent to defraud, it was held that a charge that such intent should be proved was rightly refused. See p. 268.

The principle is that where a statute prohibits an act under certain circumstances, and a person commits the act not under a mistake of fact, a criminal intention is conclusively presumed. Clark & M. Crimes, p. 83; *State* v. *Voight,* 90 N. C. 741–744; *State* v. *McLean,* 121 N. C. 589–595, 42 L.R.A. 721, 28 S. E. 140; *Com.* v. *Connelly,* 163 Mass. 539–542, 40 N. E. 862; *State* v. *Fricker,* 45 La. Ann. 646, 12 So. 755.

The defendant in this case, an attorney, was proved to have collected money for his client, which it was his duty to pay over to her promptly upon collection. If he wrongfully converted it to his own use, he was guilty of the offense of embezzlement as defined in the Code. The wrongful conversion imports the evil intent; and the defendant would not be heard to say that, in converting the money to his own use, he had no intent to defraud the person whose money he wrongfully converted. It is true that if he converted the money to his own use or to any other purpose by the consent or direction of his client, he would not have been guilty of wrongful conversion. But he made no pretense that such was the case. On the contrary, he attempted to show that he kept the money in a special deposit because of notice by the judgment debtor of an action to recover the same; in other words, that he did not convert it at all to his own use. If he did not use the money, but held it upon reasonable grounds and in good faith for a reasonable time, he would not have been guilty of wrongful conversion. This question of fact was submitted to the jury, presumably under a correct charge, as no exception was taken on that account, and found against him. The effect of the charge was that the intent is to be inferred from the fact of conversion. If the money of his client was actually converted to his own

use by the defendant, under no mistake of fact, as above indicated, the act was in its nature evil and wrongful, and made criminal by the express language of the statute.

As before noted, no exception was taken to the admission of the evidence relating to the purpose of the assignment, and no instruction founded thereon was requested. On a motion for new trial it was argued that the purpose of the parties executing a written instrument may not be inquired into, except in a court of equity, in a suit to determine the equitable interest of a party, where no legal interest appears on the face of the instrument. In other words, it is contended that Mrs. Harris, by the assignment, absolutely, without reservation to herself, assigned the judgment to defendant, and that he could not be guilty of embezzling an undisclosed interest in the funds derived therefrom. It is urged that if such an interest existed, the assignment changed the relation of the parties from an attorney and client to debtor and creditor, and that the debt could only be enforced in a court of equity with power to modify the terms of the assignment. The argument is repeated here upon the assumption that the failure of the court to so instruct the jury was a fundamental error, that may be taken notice of without an exception. Assuming, without deciding, that the question can be so presented, there is nothing in the contention. This is not an action to recover Mrs. Harris's interest in the fund collected, but a criminal prosecution wherein defendant is charged with having embezzled money collected under the authority of assignments made for that express purpose. Moreover, the defendant is in no position to raise such a question, after having admitted that the assignment was only intended to cover his own interest to the extent of his fee. From his own testimony, therefore, it clearly appeared that at the time of the wrongful conversion of the proceeds of the entire judgment, the relation of attorney and client still existed between him and Mrs. Harris. The case is the same as if no assignment had ever been executed. There is nothing in the record to afford any reasonable ground for procuring the assignment of the entire judgment. It can only be accounted for by the inference that he

contemplated making an improper use of it in violation of his obligation to his client. To permit an attorney to procure such an assignment from a trusting client, thereby converting himself into a debtor merely, and enabling him to convert a fund that he had collected as an attorney, would. open the door to the perpetration of crime with impunity.

The defendant was accorded every right, on the trial, that he was entitled to; and the judgment will be affirmed.

*Affirmed.*