Carlos E. **ANZOATEGUI**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 18365.

United States Court of Appeals
District of Columbia Circuit.

Argued April 28, 1964.

Decided July 3, 1964.

Mr. John W. Cragun, Washington, D. C. (appointed by this court) for appellant.

Mr. B. Michael Rauh, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and William C. Pryor, Asst. U. S. Attys., were on the brief, for appellee.

Before DANAHER, WRIGHT and McGOWAN, Circuit Judges.

DANAHER, Circuit Judge:

This appellant was convicted of embezzlement in a situation said to be covered by D.C.CODE, § 22–1202 (1961).[1] The indictment charged that on or about November 8, 1962, the appellant had wrongfully converted to his own use and had fraudulently taken and secreted with intent to convert to his own use, six hundred forty nine dollars which belonged to Dupont Plaza, Inc. The money had come into his possession by virtue of his employment as a clerk at the Dupont Plaza Hotel. He argues that the loss of the funds was not criminal.

Appellant does not question his civil liability for the shortage in his account. By his motion for acquittal at the close of the Government's case and again at the close of the entire case, he challenged the sufficiency of the evidence. He insisted at trial as he does here that at most the Government proved only that the appellant had negligently carried from the hotel premises the money which had been entrusted to him and that thereafter the funds had either been lost or stolen from him. Under the circumstances, we have

1. The section in its entirety reads:
"If any agent, attorney, clerk, or servant of a private person or copartnership, or any officer, attorney, agent, clerk, or servant of any association or incorporated company, shall wrongfully convert to his own use, or fraudulently take, make way with, or secrete, with intent to convert to his own use, anything of value which shall come into his possession or under his care by virtue of his employment or office, whether the thing so converted be the property of his master or employer or that of any other person, copartnership, association, or corporation, he shall be deemed guilty of embezzlement, and shall be punished by a fine not exceeding one thousand dollars, or by imprisonment for not more than ten years, or both."

carefully examined the entire record as we were bound to do.

We observe at once that there was no evidence whatever that the appellant had "fraudulently" taken, made away with, or secreted his employer's funds "with intent to convert" the same "to his own use." So clearly was that possible predicate for a finding of embezzlement deemed out of the case, the trial judge gave no instruction concerning it. Thus, had the Government sought to rely upon that basis of conviction, the motion to acquit certainly should have been granted. But the statute spells out two classes [2] of acts, either one of which may constitute embezzlement.

We turn accordingly to that portion of the indictment which, following the statute, charges that the appellant had "wrongfully" converted to his own use the funds of his employer. This latter method of committing embezzlement was relied upon here. The Government seems to have misapprehended the significance of the essentials of the statutory definition, indeed it has contended on brief: "Intent to defraud is not an element of the first clause [wrongful conversion], as it is of the second." The Government has mistakenly read *O'Brien v. United States* [3] as so holding. In *Masters v. United States* [4] after recognizing a clear distinction between the two statutory clauses, this court said "But in neither case is the element of intent eliminated from the crime of wrongful conversion." [5]

Recognizing that not all conversions are criminal, this court elsewhere in *Masters* carefully explained:

"[W]here the lawmakers have incorporated into the act a word or words descriptive of the crime which imply the necessity of 'a mind at fault before there can be a crime,' criminal intent becomes an essential fact in establishing the guilt of a person accused of its violation. The crime here does not consist in mere conversion, but in wrongful conversion. The word 'wrongful' in its legal signification must be defined from a criminal standpoint, since it is here used in a penal statute to define a crime. That the word has a well-defined meaning when used in criminal statutes is supported by Webster, who defines it as doing a thing 'in a wrong manner; unjustly; in a manner contrary to moral lay [*sic*] or justice.' The word 'wrongful,' like the words 'wilful,' 'malicious,' 'fraudulent,' etc., when used in criminal statutes, implies a perverted evil mind in the doer of the act. The word 'wrongful' implies the opposite of right, a perverted evil mind in the doer of the act." [6]

Much the same problem was considered by the Supreme Court in *Morissette v. United States*. [7] There the Court observed that

"Conversion, however, may be consummated without any intent to keep and without any wrongful taking, where the initial possession by the converter was entirely lawful. Conversion may include misuse or abuse of property. It may reach use in an unauthorized manner or to an unauthorized extent of property placed in one's custody for limited use. *Money rightfully taken into one's custody may be converted without any intent to keep or embezzle it merely by commingling it with the custodian's own,* if he was under a

---

2. The Government's brief correctly states that the "statutory offense of embezzlement may be committed by either of two methods," citing Patterson v. United States, 39 App.D.C. 84, 89 (1912), and see Masters v. United States, 42 App.D.C. 350, 358 (1914); cf. O'Brien v. United States, 27 App.D.C. 263, 269 (1906).

3. *Supra* note 2.

4. *Ibid.*

5. *Supra* note 2, 42 App.D.C. at 358.

6. *Id.* 42 App.D.C. at 356.

7. 342 U.S. 246, 252, 264, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

duty to keep it separate and intact."[8] (Emphasis added.)

Mr. Justice Jackson further pointed out in *Morissette* that the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act. "A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect," and "this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime. Such incriminating presumptions are not to be improvised by the judiciary."[9]

It seems clear enough from our study of the record, not only from the instructions actually given to the jury, but from colloquy between judge and counsel that the trier had misconstrued the standard which should have governed his ruling on the appellant's motion for acquittal.

Before the trial court was evidence that this appellant was one of several cashier clerks at the Dupont Plaza Hotel. To each clerk was assigned a safe deposit box to which he alone had a key. Into the custody of each clerk the management placed a "bank" of $1,000 which he was to use in the performance of his duties, making change, cashing personal and travelers' checks and effectuating proper disbursements. Each clerk signed a receipt which read:

"Received of Hotel Dupont Plaza $1,000 to be used by me in my duties as front desk clerk at Hotel and to be returned to the Hotel upon termination of my employment."

The appellant, as the auditor testified, had been given "no written instructions. We assumed the cashier knows how to handle it. It is a simple matter."

Shortly before midnight on the evening of November 8, 1962, when the appellant's tour of duty was to end, he was counting his "bank," assembling bills of various denominations and otherwise completing his accounts. He had already placed in the box two packages, each containing $100 in $1 bills. There were rolls of quarters, dimes, and other change, all to a total of $351. While so engaged the telephone rang. Answering the telephone, the appellant swept the remaining funds into an envelope which he placed in his pocket. As he busied himself about his duties, his relief appeared. With the envelope still in his pocket, appellant hastened to find a taxicab that he might keep an engagement. While having drinks with a woman, he discovered the envelope in his side coat pocket and placed it into his inside coat pocket for safekeeping. Unwilling at that hour to return to the hotel, especially after having been drinking, he went on to a party at a restaurant. When he awakened the following morning the envelope was gone. He then sought to retrace his steps of the previous evening in an effort to locate the missing envelope. He telephoned to the hotel that he would not be back that day for duty. Next, under circumstances not shown on this record he was arrested on a charge[10] in no way related to the instant case. Interviewed at the jail by the assistant manager and later by a police officer, he explained the circumstances and the series of inadvertent steps which led to his involvement. There was no evidence to the contrary. There was no proof that

---

8. *Id.* 342 U.S. at 271–272, 72 S.Ct. at 254.

9. *Id.* 342 U.S. at 275, 72 S.Ct. at 256. As in Morissette, there was no doubt about the taking. Appellant contended throughout that there had been no evil intent. But our trial judge instructed the jury that the appellant's "intent may be deduced from circumstances and from things done and from things said and a person is presumed to intend the natural and probable consequences of his act." That axiom, true enough in so many situations, is certainly no substitute for a finding by the trier of guilty intent when, as here, intention is in fact and in law an ingredient of the offense charged. See note 6 *supra,* cited to text.

10. The charge against him was dismissed.

he spent any money belonging to the hotel, for himself or on any other account. He had told the assistant manager "he didn't need it." He promised to attempt restitution.

The Government on brief says that he "most likely realized it would be an expensive affair," and that the lapse of time before the loss was discovered allowed him "plenty of time for a spree." Such speculation does not take the place of evidence. What was established on this record shows only that the appellant locked $351 in his safe deposit box, and that he had then carelessly and in haste walked out of the hotel with an envelope containing $649 which should have been left there. Some time during the early morning hours of November 9th, the appellant lost or some other person stole the money which belonged to the hotel. That money, as the terms of the receipt specified, *supra*, was subject to return by him only upon termination of the appellant's employment.

Applying the principles we have discussed to the evidence offered by the Government, it is clear that the conversion was not shown to have been accompanied by the essential criminal intent. The motion for a directed verdict of acquittal at the close of the Government's case should have been granted.

Reversed.